# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0523V

| | |
|---|---|
| TAMELA SPRIGG,<br><br>　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: March 5, 2025 |

*Brian L. Cinelli, Marcus & Cinelli, LLP, Williamsville, NY, for Petitioner.*

*Lauren Kells, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION AWARDING DAMAGES[1]

On January 11, 2021, Tamela Sprigg filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that as a result of an influenza ("flu") vaccine received on October 26, 2018, she suffered a left shoulder injury related to vaccine administration ("SIRVA") as defined on the Vaccine Injury Table (the "Table"). Petition (ECF No. 1).

In December 2023, I resolved entitlement in Petitioner's favor, and directed the parties to seek agreement on an appropriate damages award – but one which might not encompass Petitioner's post-surgery subsequent complaints. Ruling on Entitlement (ECF No. 41), available at *Sprigg v. Sec'y of Health & Hum. Servs.*, No. 21-523V, 2023 WL

---

[1] Because this decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

9288067 (Fed. Cl. Spec. Mstr. Dec. 11, 2023) (the "Entitlement Ruling"). That ruling – including the summary of the previous procedural history, and the underlying evidence – is fully incorporated and relied upon herein.

The parties' damages discussions reached an impasse in April 2024, and they have now briefed the issue. Damages Brief filed June 3, 2024 (ECF No. 47); Response filed July 9, 2024 (ECF No. 49); Reply filed July 24, 2024 (ECF No. 50). The matter is now ripe for adjudication.

**For the following reasons, I find that Petitioner is entitled to compensation in the form of a lump sum payment of $110,000.00 (for past pain and suffering).**

## I. Authority

In another recent decision, I discussed at length the legal standard to be considered in determining SIRVA damages, taking into account prior compensation determinations within SPU. I fully adopt and hereby incorporate my prior discussion in Section II of *Yodowitz v. Sec'y of Health & Hum. Servs.*, No. 21-370V, 2024 WL 4284926, at *2 – 3 (Fed. Cl. Spec. Mstr. Aug. 23, 2024).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[3]

## II. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

---

[3] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

When performing the analysis in this case, I review the record as a whole to include the medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

The evidence has already been discussed in Respondent's Rule 4(c) Report, the parties' briefing, and the Entitlement Ruling. As the record establishes, Petitioner Tamela Sprigg was born in 1960. She was retired, but caring for her mother and her mother-in-law, who were both living in her home. Ex. 1 – Petitioner's Affidavit at ¶¶ 3, 8; *see also* Ex. 2 – Husband's Affidavit at ¶ 9 (recalling that in or around September 2018, one mother joined their household, and the other's health worsened). She had no history of shoulder pain or dysfunction upon receiving the at-issue flu vaccine in her left deltoid on October 26, 2018. Ex. 19 at 1.

Petitioner was not documented to have any complaints or findings of a shoulder injury at two subsequent medical appointments. Specifically, she obtained an urgent care evaluation of a new left ankle injury (with a pain rating of 8/10) on November 10, 2018, Ex. 7 at 1 – 2; and discussed mental health concerns related to her caregiving responsibilities, plus low back pain with her primary care provider ("PCP") on November 14, 2018, Ex. 16 at 1291 – 93.

As I previously noted: "[t]hose encounters happened less than 20 days after the vaccination, when (as maintained in witness statements) Petitioner and her husband hoped that she was experiencing "just normal soreness" that would subside. Petitioner and her husband also allege that caregiving responsibilities and the December holidays help to explain the subsequent delay in treatment. Ex. 1 at ¶¶ 6 – 7; Ex. 2 at ¶¶ 4 – 10." *Sprigg*, 2023 WL 9288067 at *5. Nevertheless, those two intervening encounters demonstrate that Petitioner could have sought medical treatment for her shoulder injury earlier than she actually did (76 days post-vaccination, with the same PCP),[4] and that she was able to manage her condition secondary to her other medical concerns. *See, e.g.*, Ex. 16 at 1291 – 93 and Ex. 8 at 2 (reflecting that the PCP prescribed oxycodone-acetaminophen *for her low back pain* after the November 14th encounter).

---

[4] Petitioner recalls that the primary care practice could not schedule an evaluation of her shoulder for several weeks. Ex. 1 at ¶ 10. However, even accounting for the scheduling delay, Petitioner only *contacted* the primary care office "sometime in December 2018," *id.* at ¶ 9, which was at least five weeks after the vaccination and accepted onset of the injury.

However, once Petitioner sought treatment for her shoulder injury, her condition was documented to be moderately severe and resistant to conservative treatment. *See, e.g.*, Ex. 16 at 1304 – 05, 1318 (January 4, 2019 PCP evaluation of "severe" shoulder pain, prompting a new prescription for prednisone); *id.* at 1320 (January 16, 2019, renewed prescription of oxycodone-acetaminophen, not specifying the condition to be treated); Ex. 16 at 1312 – 13 (January 17, 2019 MRI findings of subacromial and sub-deltoid bursitis; mild to moderate AC joint osteoarthrosis; and rotator cuff tendinosis); Ex. 6 at 1 – 3 (February 26, 2019 orthopedics initial evaluation, steroid injection, and suggestion of surgery); Ex. 7 at 4 – 5 (March 15, 2019 PT initial evaluation, recording that the steroid injection had only "slightly decreased her pain," which currently ranged from 4 – 10/10; exam findings of reduced range of motion; and recommendations of home exercise and a TENS/NMES unit); Ex. 6 at 4 – 7 (March 19, 2019, orthopedics follow-up, recording Petitioner's improvement with conservative measures and their decision to proceed to surgical intervention).

Eventually, in April 2019, Petitioner underwent arthroscopic surgery featuring subacromial decompression, rotator cuff repair, distal clavicle resection, and labral tear debridement. Ex. 7 at 38 – 40. She was discharged with a sling, and a new prescription for hydrocodone-acetaminophen. Ex. 7 at 5, 77, 80; Ex. 8 at 2.

Petitioner's post-surgical recovery was not immediate. Although Respondent emphasizes an April 22, 2019 orthopedics follow-up record suggesting that Petitioner's pain was "minimal," that record is not obviously accurate – for instance, suggesting that she was already "making good steady progress in PT." Ex. 6 at 8 – 9. In fact, the *first* post-operative PT record is from earlier that same day – and it reflects pain ranging from 3 – 9/10, and the therapist's concern about "high pain levels at rest." Ex. 7 at 99 – 101. And over one month later on May 30, 2019, Petitioner reported shoulder pain ranging from 1 – 9/10. *Id.* at 102.[5]

But Petitioner did later make good progress, with 14 total post-operative PT sessions, and she was discharged on June 25, 2019. Ex. 7 at 102 - 28. Her pain had decreased to 0/10 currently, and 3/10 at worst. *Id.* at 127. By that point her ROM was improved to within normal limits, and she had met all of her goals. *Id.* at 128. She "still ha[d] minor problems with flexibility and strength but was assured that this will continue to improve over the next several months as long as she continues her HEP." *Id.* at 127.

---

[5] Petitioner states that she was prescribed gabapentin to address her shoulder pain in May 2019. Ex. 1 at ¶ 11; Ex. 8 at 2 – 3. But there is not preponderant evidence to support that recollection, because the gabapentin was prescribed for a "mix" of complaints, the "biggest" being her chronic, unrelated "neuropathic back pain." Ex. 17 at 266, 268.

4

Similarly at a July 1, 2019, orthopedics follow-up, Petitioner reported that she was "doing great." Ex. 6 at 11. She had full active and passive ROM and negative Neers and Hawkins tests. *Id.* The orthopedist assessed Petitioner to have "recovered from this injury" and required no restrictions. *Id.* The orthopedist noted that Petitioner could return if additional problems or concerns arose, *id.*, but that did not occur for nearly two years (as discussed further below).

In a January 2021 affidavit, Petitioner confirmed that her shoulder was at least "significantly improved, although [she] still experience[d] periodic pain and soreness in [her] shoulder depending on [her] activity level." Ex. 1 at ¶ 15; *see also* Ex. 2 at 12 – 13 ¶¶ (stating that Petitioner's shoulder was "improved significantly" but "not back completely to the way it was before").

**The above evidence establishes that Petitioner's left-sided SIRVA was moderately severe for roughly eight months (from the October 26, 2018 vaccination to her July 1, 2019, discontinuation of treatment).** That injury was manageable during an initial 76-day treatment delay, but nonetheless severe enough to warrant a prompt prescription for prednisone, an MRI, a steroid injection, an initial PT evaluation, and surgical intervention. However, the surgery and 15 total PT sessions delivered a substantial if not complete recovery by eight months post-vaccination – July 1, 2019. Throughout this acute period, Petitioner had difficulty fulfilling her personal obligations, specifically caring for two aging family members who were living in her home.

For those reasons, Respondent's pain and suffering valuation of just $67,500.00 is too low. Response at 1. Such a figure would be significantly below the "baseline six-figure 'yardstick' [for] SIRVA pain and suffering demands in cases involving surgery." Reply at 4.[6, 7] And Respondent does not fully account for Petitioner's high pain levels, and her relative lack of relief from the steroid injection, PT consultation, home exercises, and use of a TENS unit in the months before her surgery. Petitioner's pain and suffering was certainly more severe than that of the petitioner in Respondent's only cited case, *Hunt.* Response at 6 – 7.[8] Although the *Hunt* petitioner's multiple steroid injections were invasive, they also delivered periods of "little to no pain," *Hunt*, 2022 WL 2826662, at *2

---

[6] Quoting *Dezurik v. Sec'y of Health & Hum. Servs.*, No. 20-1357V, 2022 WL 5419845, at *5 (Fed. Cl. Spec. Mstr. Sept. 6, 2022) (awarding $105,000.00 for past pain and suffering).

[7] Respondent's $67,500.00 valuation is also well below the median – at roughly the first quartile - of *all* (surgical and non-surgical) SIRVA pain and suffering awards resolved by special masters. *Yodowitz*, 2024 WL 4284926, at *3

[8] Citing *Hunt v. Sec'y of Health & Hum. Servs.*, No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022) (awarding $95,000.00 for past pain and suffering).

– 3, 8; compared to the nearly six months of persistent pain prior to surgery seen in this case. Additionally, *Hunt* did not feature the disruptions to caregiving obligations established in this case, or similarly compelling circumstances.

Petitioner's request for a past pain and suffering award of $120,000.00, by contrast, is more appropriate. Brief at 9. Most instructive is her reliance on *Vaccaro*, Reply at 4.[9] That case's 93-day initial treatment delay without any intervening encounters is roughly equivalent to this case's 70-day initial treatment delay with two intervening encounters and extenuating personal circumstances. *Vaccaro* also featured one steroid injection that was largely ineffective, surgical intervention and about three months of PT, followed by substantial recovery and discontinuation of treatment. 2022 WL 662550, at *4 – 5. The *Vaccaro* opinion also relied in part on similar past awards in *Collado* and *Knudson*. 2022 WL 662550, at *5; *accord* Brief at 10 – 12; Reply at 2 – 3.[10]

However, Petitioner's demand of $120,000.00 is also based in part on the view that the pain and suffering award in this case should take into account her later left-shoulder complaints, which resulted in additional PT and surgery. She argues that this was a "reinjury" resulting from a "recurrent tear of the rotator cuff," which "may be related to the original vaccination injury and should be considered to some extent in assessing damages." Brief at 7.

Petitioner's contention about this later treatment phase is unpersuasive. The record reveals that after a nearly two-year gap in medical record documentation, Petitioner was documented in spring 2021 to have a *distinctly different* injury of not only left shoulder pain, but numbness and tingling extending through her am, forearm, and fingers. Ex. 20 at 150. Her orthopedist did not draw any connection to her 2018-19 shoulder injury, instead opining that the present "discomfort is coming more from her neck and not the shoulder." *Id.* Similarly the spring 2021 PT records reflect a diagnosis of cervicalgia. *Id.* at 146.

Afterwards (starting in early 2022), Petitioner was documented to have an injury limited to the shoulder's musculoskeletal structures, with both MRI and surgical findings of a "recurrent" rotator cuff tear. Ex. 20 at 41, 73 – 74. But again, this medical complaint began *two and one-half years* after the SIRVA was assessed as "recover[ed]," Ex. 6 at 11, and her treaters did not connect the two complaints – instead emphasizing an

---

[9] *Vaccaro v. Sec'y of Health & Hum. Servs.*, No. 19-1883V, 2022 WL 662550 (Fed. Cl. Spec. Mstr. Feb. 2, 2022) (awarding $110,000.00 for past pain and suffering).

[10] Citing *Collado v. Sec'y of Health & Hum. Servs.*, No. 17-552V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018) (awarding $120,000.00 for past pain and suffering); *Knudson v. Sec'y of Health & Hum. Servs.*, No. 17-1004V, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) ($110,000.00).

intervening and unrelated cause. Specifically, Petitioner acknowledged that after undergoing a knee replacement in November 2021, she over-relied on her left shoulder while walking with a cane, developing new left shoulder pain in about January 2022. *See, e.g.*, Ex. 20 at 41, 80, 92, 141 – 42.

A SIRVA is thought to involve the "unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction." 42 C.F.R. § 100.3(c)(10). But it is far from established that a SIRVA will lead to inflammation persisting for several years after, or a greater risk of reinjury by later unrelated causes. Thus, even if Petitioner sincerely *believes* that her SIRVA has some connection to her complaints over two years later, there is not preponderant evidence to support that conclusion. *See Meagher v. Sec'y of Health & Hum. Servs.*, No. 18-1572V, 2023 WL 8713607, at *12 (Fed. Cl. Spec. Mstr. Nov. 17, 2023), citing *James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (explaining that "lay opinions as to causation or medical diagnosis may be properly categorized as mere 'subjective belief' when the witness is not competent to testify on those subjects").

For the foregoing reasons, I will award slightly less than Petitioner requests – in line with the *Vaccaro* case, $110,000.00 for past pain and suffering.

## Conclusion

For all the reasons discussed above and based on consideration of the entire record, **Petitioner is entitled to damages in the form of a lump sum payment of $110,000.00 (for past pain and suffering), to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.**

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[11]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[11] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.